# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 00-1132/2756/3242

———————

| | | |
|---|---|---|
| Robert Foulk, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Ronald Charrier, Lieutenant Charrier | * | |
| individually and in his official | * | Appeal from the United States |
| capacity, | * | District Court for the |
| | * | Eastern District of Missouri |
| Defendant-Appellant. | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Intervenor below-Appellant. | * | |

———————

Submitted:  May 18, 2001

Filed:  August 17, 2001

———————

Before McMILLIAN and BOWMAN, Circuit Judges, and MOODY,[1] District
    Judge.

———————

McMILLIAN, Circuit Judge.

———————

[1]The Honorable James M. Moody, United States District Judge for the Eastern
District of Arkansas, sitting by designation.

Ronald Charrier, who at all relevant times was a corrections officer at the Moberly Correctional Center (MCC) in Moberly, Missouri, appeals from a final judgment entered in the United States District Court for the Eastern District of Missouri,[2] following a jury trial, in favor of Robert W. Foulk, a former MCC inmate, on Foulk's Eighth Amendment claim of excessive use of force, brought pursuant to 42 U.S.C. § 1983. Based upon the jury's verdict, Charrier was ordered to pay Foulk one dollar in nominal damages plus interest and costs. Foulk v. Charrier, No. 2:89CV18 (E.D. Mo. Aug. 25, 1999) (judgment). Charrier, together with the United States, as intervenor-appellant, also appeals from the district court's order awarding Foulk $12,048.60 in attorney's fees and $163.00 in costs, pursuant to 42 U.S.C. § 1988. Id. (June 8, 2000) (order). For reversal, Charrier argues that the district court: (1) erred in failing to dismiss Foulk's excessive force claim on the basis of Foulk's alleged failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 (PLRA); (2) abused its discretion in excluding evidence about the specific nature of Foulk's prior felony convictions; (3) abused its discretion in limiting the documents Charrier could introduce at trial; (4) erred in instructing the jury on nominal damages; (5) erred in denying Charrier's motion for judgment as a matter of law based on insufficiency of the evidence; and (6) erred in awarding attorney's fees above $1.50 despite the attorney's fees provision of the PLRA, 42 U.S.C. § 1997e(d)(2) or, alternatively, abused its discretion in determining the amount of the attorney's fees award under 42 U.S.C. § 1988. The United States seeks reversal solely on the basis of the district court's failure to limit the attorney's fees award to $1.50, based upon 42 U.S.C. § 1997e(d)(2).

[2]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri. The parties consented to the exercise of Magistrate Judge Noce's authority under 28 U.S.C. § 636(c).

For the reasons stated below, we vacate the district court's order awarding attorney's fees and costs; we remand for a redetermination of attorney's fees and, if necessary, costs; and we affirm the judgment of the district court in all other respects.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331, 1343. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notices of appeal were timely filed pursuant to Fed. R. App. P. 4(a).

## Background

*Factual history*

The following summary of underlying facts is based upon the evidence presented at trial, viewed in a light favorable to the jury's verdict.

On June 21, 1994, Foulk, an inmate at MCC, went to the prison infirmary complaining of illness after his dosage of seizure medication had been increased. He filled out a request for medical services and asked to see a doctor immediately. In an effort to avoid a delay in getting medical attention, Foulk became loud and demanded to see a doctor. Foulk was seen by Dr. Knudson, who noted that Foulk had been over-medicated. Under Dr. Knudson's orders, Foulk was admitted to the infirmary. Foulk slept in the infirmary from approximately 4:00 p.m. on June 21, 1994, until approximately 5:30 p.m. on June 22, 1994, when he was awoken by corrections officer Shawn Bates, who told Foulk it was time to eat. Foulk told Bates that he was not hungry and wanted to be left alone. A few minutes later, Foulk was again awoken and told to eat. Foulk again refused and, this time, became angry. According to Foulk, he again fell back asleep. At approximately 9:30 p.m., Foulk was again awoken by

corrections officers, who told him that he had been issued conduct violations.[3]  Foulk became angry and asked for the reason for the conduct violations.  When the corrections officers would not respond, Foulk demanded that he be allowed to speak to a supervisor.

According to Foulk, he was still feeling the effects of the medication and once again fell back asleep.  A short time later, Charrier and other corrections officers came into Foulk's room, aroused him, and ordered him to stand spread eagle against the wall.  The officers removed the bed and portable equipment from the room.  Charrier sprayed Foulk on the side of the face with pepper spray and left the room, locking the door behind him.  When Foulk asked for the name of the officer who had sprayed him, Charrier told Foulk to come close to the door to get a good look at his name tag through the screened window in the door.  When Foulk did as Charrier suggested, and put his face up to the screen, Charrier sprayed pepper spray through the screen directly into Foulk's face.

Despite the fact that Charrier had sprayed pepper spray directly into Foulk's eyes and nose, Foulk was not offered medical assistance.  Moreover, he was put into solitary confinement in a cell that had no running water and only dry paper towels to wipe his face.  He was not permitted to shower for at least two days.  Foulk continued to feel the painful effects of the pepper spray for several days.[4]

---

[3]According to Bates, Foulk had become threatening and violent each time he was awoken for dinner, thereby justifying the conduct violations.  Foulk, however, denies any misconduct.

[4]Charrier introduced evidence at trial indicating that Foulk was offered medical treatment but refused it.  The defense also presented evidence suggesting that Foulk was placed in a room that had a sink with running hot and cold water.

The prison conducted an internal administrative review of the conduct violations issued against Foulk. The prison administration determined that Foulk was guilty of the alleged misconduct and that the officers, including Charrier, were justified in their actions. Foulk was transferred to another prison.

*Procedural history*

In 1989, several years before the above-summarized events took place, the original complaint in the present action was filed in federal district court by 29 MCC inmates, including Foulk, alleging various forms of mistreatment at MCC by employees of the Missouri Department of Corrections (MDOC), in violation of federal constitutional and statutory rights. The complaint was amended numerous times, with the above-summarized events being raised for the first time in the fourth amended complaint filed on December 15, 1995. The fifth amended complaint, filed June 2, 1997, was the first to specifically name Charrier as a defendant. The fifth amended complaint sought damages and injunctive relief based upon numerous alleged constitutional violations by MDOC officials and employees. Through the district court's dispositions of various motions, and the parties' agreements to dismiss various claims and parties, the matter was eventually reduced to one plaintiff (Foulk), one defendant (Charrier), and one count (excessive use of force in violation of the cruel and unusual punishment clause of the Eighth Amendment).

After Charrier unsuccessfully moved for summary judgment, a trial by jury was held from August 23 to August 25, 1999. Over objections by the defense, the district court excluded evidence revealing the specific nature of Foulk's prior felony convictions and also limited the number of documents the defense could introduce into evidence; and, contrary to Charrier's requested jury instructions, the district court allowed the jury to award nominal damages.

During the trial, Charrier made an oral motion to dismiss the case for lack of subject matter jurisdiction, raising for the first time the argument that, because Foulk had failed to exhaust all available administrative remedies, the action was jurisdictionally barred under 42 U.S.C. § 1997e(a), as amended by the PLRA (hereinafter referred to as the "PLRA exhaustion requirement").[5] See Trial Transcript, Vol. II, at 189. The district court denied the motion and the trial proceeded. The jury subsequently returned a verdict in favor of Foulk in the amount of one dollar.

Charrier filed a post-trial motion for judgment as a matter of law or for a new trial, again arguing, among other things, that the action was jurisdictionally barred under the PLRA exhaustion requirement. The district court denied Charrier's motion on November 4, 1999. Charrier timely filed a notice of appeal from the judgment (Appeal No. 00-1132).

Meanwhile, Foulk moved pursuant to 42 U.S.C. § 1988 for an award of attorney's fees and costs in the amount of $50,751.03. In response, Charrier argued, among other things, that he could not, as a matter of law, be required to pay more than $1.50 in attorney's fees, in view of the PLRA's attorney's fees provision, 42 U.S.C. § 1997e(d)(2).[6] On June 8, 2000, the district court ordered Charrier to pay Foulk

---

[5]Section 1997e(a) of Title 42, United States Code, provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

[6]Section 1997e(d)(2) of Title 42, United States Code, provides:

Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against

$12,048.60 in attorneys' fees and $163.00 in costs. <u>Foulk v. Charrier</u>, No. 2:89CV18 (June 8, 2000) (order directing Charrier to pay attorney's fees and costs). On July 7, 2000, Charrier appealed from the order awarding Foulk attorney's fees and costs (Appeal No. 00-2756). The United States intervened and filed a notice of appeal on August 4, 2000, from the same order awarding Foulk attorney's fees and costs (Appeal No. 00-3242). The three appeals were consolidated, and they are now before this court.

## Discussion

*Exhaustion of administrative remedies requirement*

Charrier argues that the district court erred in failing to dismiss Foulk's excessive force claim on the basis of Foulk's alleged failure to exhaust available administrative remedies, as required by the PLRA exhaustion requirement. As stated above, the district court addressed the issue twice – when the court denied Charrier's mid-trial oral motion to dismiss for lack of subject matter jurisdiction and when the court later denied Charrier's post-trial motion for judgment as a matter of law or for a new trial.

On appeal, Charrier contends that the following prerequisites to the application of the PLRA exhaustion requirement have been met: (1) the action was brought by a prisoner confined in a jail, prison, or other correctional facility, (2) the action was brought after the enactment of the PLRA, and (3) the action concerns prison conditions. Charrier first points out, and it is undisputed, that Foulk was a prisoner at all relevant times. Second, Charrier argues that the action was brought after the enactment of the PLRA because Charrier was not specifically identified as a defendant until the fifth amended complaint, which was filed after the PLRA was signed into law on April 26,

the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

1996. On this point, Charrier maintains that the dates of the original complaint and prior amended complaints are irrelevant; otherwise, prisoners could circumvent the PLRA exhaustion requirement simply by adding claims and defendants to pre-existing lawsuits. Third, Charrier argues, the claim of excessive use of force is "with respect to prison conditions" because it involves the effects of Charrier's actions on Foulk's life. See 18 U.S.C. § 3626(g)(2) (defining "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison"). Therefore, Charrier maintains, Foulk was required to exhaust all available administrative remedies before pursuing his § 1983 claim.

For a Missouri prisoner to exhaust all available administrative remedies, Charrier continues, the prisoner must file an Informal Resolution Request (IRR), an Inmate Grievance, and an Inmate Grievance Appeal. See Brief for Appellant at 25 (No. 00-1132) (citing Smith v. Stubblefield, 30 F. Supp. 2d 1168, 1174 (E.D. Mo. 1998)). In the present case, Charrier contends, Foulk did not exhaust his administrative remedies because he filed only an IRR, but failed to file a grievance and a grievance appeal. See id. (citing Trial Transcript at 188 (cross-examination of Foulk)).

In response, Foulk argues that, for purposes of the retroactivity issue, the present action was brought at the time the fourth amended complaint was filed because it was there that the excessive force claim was originally asserted, albeit against "John Doe" defendants, described as "unknown correctional officers [at MCC]." See Brief for Appellee at 9 (No. 00-1132). Thus, he argues, because the fourth amended complaint was filed prior to the enactment of the PLRA, and he has already prevailed at trial, application of the PLRA exhaustion requirement at this stage of the litigation would produce an impermissible retroactive effect. Id. at 9-10 (citing, e.g., Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994)). Foulk also argues that the PLRA does not

apply because his Eighth Amendment claim is based on an isolated incident, and therefore this is not "an action with respect to prison conditions." Foulk further argues that the PLRA does not apply because an award of money damages – the only remedy that he sought and obtained at trial – was not available to him through the prison's administrative process.

Even if the PLRA's exhaustion requirement does apply, Foulk continues, he satisfied that requirement by timely filing an IRR. He emphasizes that MDOC failed to respond to his IRR within thirty days, as required. He suggests that the failure to act by MDOC halted the process. In other words, he maintains that he did all he could to obtain administrative relief, thereby exhausting his available administrative remedies. Foulk additionally suggests that Charrier waived his right to rely on the PLRA exhaustion requirement because he failed to adequately present the issue prior to the commencement of the trial. Foulk argues that "[i]t would be a miscarriage of justice to allow [Charrier] to fail to properly participate in the administrative remedy procedure and then to raise same as a defense after [Foulk] has prevailed at trial." Brief for Appellee at 12 (No. 00-1132) (citing Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998), cert. denied, 526 U.S. 1133 (1999)).

To begin, we note that, after the submission of these appeals, the Supreme Court resolved at least one of the legal questions now before us – the question of whether failure to exhaust administrative remedies may be a bar to suit, under the current version of 42 U.S.C. § 1997e(a), even though the remedy being sought in court was not available to the prisoner through the administrative process. In Booth v. Churner, 121 S. Ct. 1819 (2001), the plaintiff, a prisoner, argued that he was not required under § 1997e(a) to exhaust his administrative remedies before bringing his § 1983 action alleging a constitutional violation, because money damages were not available through the prison's administrative process, and that was the only remedy he was seeking in federal court. The Supreme Court rejected the plaintiff's argument, holding that, under the PLRA, a particular remedy need not be available through the prison's administrative

process in order for the PLRA exhaustion requirement to apply. Focusing on § 1997e(a)'s statutory history, the Supreme Court noted that the pre-PLRA version of the statute contained language allowing dismissal of a prisoner suit for failure to exhaust administrative remedies if a "plain, speedy, and effective" remedy were available. Based on that language (particularly, the word "effective"), the Supreme Court had previously held, in McCarthy v. Madigan, 503 U.S. 140, 155-56 (1992), that a prisoner's claim in federal court seeking monetary damages could not be barred for failure to exhaust administrative remedies unless monetary damages were administratively available. As part of the PLRA, however, Congress specifically deleted the "plain, speedy, and effective" language from § 1997e(a). In so doing, the Supreme Court concluded, Congress must have intended for the exhaustion requirement to apply "regardless of the relief offered through administrative procedures." Booth v. Churner, 121 S. Ct. at 1824-25.

In light of Booth v. Churner, we now hold that the PLRA exhaustion requirement may apply to the case at bar even if money damages were not available to Foulk through the prison's administrative process.

We also note that Booth v. Churner involved the plaintiff prisoner's Eighth Amendment claim of cruel and unusual punishment based upon alleged isolated incidents of excessive force and denial of medical care, much like the allegations in the present case. Recognizing the Supreme Court's implicit assumption that Booth v. Churner was a "prison conditions" case, we similarly hold in the present case that Foulk's action against Charrier is "with respect to prison conditions" for purposes of applying the PLRA. Accord Smith v. Zachary, 255 F.3d 446, 452 (7th Cir. 2001) ("It is also interesting to note that the Supreme Court, although not discussing the point, required exhaustion in Booth even though the prisoner's claim grew, like here, out of an alleged assault of a prisoner by corrections officers.").

We now turn to the retroactivity issue. As stated above, Foulk argues that the pre-PLRA *fourth* amended complaint adequately asserted the excessive force claim at issue, and application of the PLRA's exhaustion requirement would be impermissibly retroactive. By contrast, Charrier argues that the relevant complaint is the post-PLRA *fifth* amended complaint, which was the first to identify Charrier by name.

We agree with the courts that have held that the current version of § 1997e(a), as amended by the PLRA, may not be retroactively applied to cases already pending at the time of the PLRA's enactment. See, e.g., Salahuddin v. Mead, 174 F.3d 271, 275 (2d Cir. 1999) ("Plaintiff had already filed his complaint as of the effective date of the [PLRA], and the command of the amended § 1997e(a) therefore had no application to this action.") (citing cases); Wright v. Morris, 111 F.3d 414, 417-23 (6th Cir.) (in-depth analysis of retroactivity issue), cert. denied, 522 U.S. 906 (1997). Therefore, if the filing date of the fourth amended complaint (or an earlier complaint) governs for purposes of determining the applicability of the PLRA exhaustion requirement, then Foulk is correct to say that the requirement cannot apply. If, however, the date of the fifth amended complaint controls, then Charrier is correct to say that the PLRA exhaustion requirement does apply. Thus, the pertinent threshold question is whether the excessive force claim asserted against Charrier in the fifth amended complaint "relates back" under Fed. R. Civ. P. 15(c) to the excessive force claim against "John Doe" defendants in the fourth amended complaint.

The issue of whether an amended complaint identifying a defendant by name will "relate back" to a previously filed complaint against a "John Doe" defendant has typically arisen in the context of statute of limitations issues. Such an amendment ordinarily will *not* be treated as relating back to the prior pleading, unless certain conditions set forth in Fed. R. Civ. P. 15(c) are satisfied. See, e.g., Barrow v. Wethersfield, 66 F.3d 466, 467 (2d Cir. 1995) ("We have stated that '[i]t is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party

-11-

sued.'  Thus, '[s]uch an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.'") (citations omitted); see generally Steven S. Sparling, Note, Relation Back of "John Doe" Complaints in Federal Court: What You Know Can Hurt You, 19 Cardozo L. Rev. 1235 (1997).

For purposes of determining the applicability of the PLRA exhaustion requirement in the present case, the appropriate time to consider the "relation back" issue under Rule 15(c), and underlying questions raised therein, would have been *before* the case went to trial.  See, e.g., Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 536 (7th Cir. 1999) ("The [PLRA exhaustion requirement] can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit.").  In the present case, however, not only was the Rule 15(c) "relation back" issue not timely presented to the district court, it was not presented to the district court at all.  This brings us to the question of whether Charrier waived his right to rely on the PLRA exhaustion requirement by failing to raise it prior to trial, as Foulk now contends.

Our court has recognized that reliance on the PLRA exhaustion requirement can be waived.  See Randolph v. Rodgers, 253 F.3d 342, 347 n.11 (8th Cir. 2001) ("The State argues that the [PLRA exhaustion requirement] required Randolph to exhaust all administrative remedies available in the prison system . . . before filing suit.  As we held the first time this case was before us, the PLRA issue was not raised in the District Court and the State has 'waived the argument on appeal.'") (quoting Randolph v. Rodgers, 170 F.3d 850, 857 n.8 (8th Cir. 1999)); accord Perez v. Wisconsin Dep't of Corrections, 182 F.3d at 536 ("Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations.").  That principle is consistent with this court's holding in Chelette v. Harris, 229 F.3d 684, 686-88 (8th Cir. 2000), cert. denied, 121 S. Ct. 1106 (2001), that failure to exhaust administrative remedies under § 1997e(a), as amended by the PLRA, does not deprive federal courts of subject matter jurisdiction. Also consistent with the holding in Chelette v. Harris, we

recognize that reliance upon the PLRA exhaustion requirement is an affirmative defense under Fed. R. Civ. P. 8(c). Accord Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999) ("A prisoner's failure to exhaust administrative remedies before filing a claim constitutes an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure.") (citing cases), cert. denied, 121 S. Ct. 2214 (2001).

As indicated above, Charrier did not raise the PLRA exhaustion issue by motion prior to the trial. See Appellants' Appendix (Appeal No. 00-1132), Vol. II, at 216-89 (motion for summary judgment). Nor did he request a jury instruction on that issue. See id., Vol. III, at 397-424 (requested jury instructions). While Charrier did include in his answer to the fifth amended complaint a general affirmative defense for failure to exhaust administrative remedies, see id., Vol. I, at 186, there is no mention in the defense of the PLRA or § 1997e(a). On the other hand, Charrier did raise the issue during trial in an oral motion to dismiss for lack of subject matter jurisdiction, see Trial Transcript, Vol. II, at 189, and he reasserted his argument in his post-trial motion for judgment as a matter of law or for a new trial. See Appellants' Appendix (Appeal No. 00-1132), Vol. III, at 438-40. We are also mindful that the present case was proceeding in the district court at a time when the law of our circuit regarding the PLRA remained undeveloped. Therefore, notwithstanding Charrier's failure to timely raise the PLRA exhaustion issue prior to the start of the trial, we hold, under the particular circumstances of this case, that Charrier did not waive his right to rely on the PLRA exhaustion requirement for purposes of the present appeal. We now turn to the PLRA exhaustion issue on its merits.

As stated above, the assertion that a plaintiff prisoner failed to exhaust all available administrative remedies as required under the PLRA is an affirmative defense under Fed. R. Civ. P. 8(c). It is the burden of the defendant asserting this affirmative defense to plead and prove it. See Massey v. Helman, 196 F.3d at 735. In the present case, notwithstanding the understandable uncertainty as to whether or not § 1997e(a) created a jurisdictional issue, Charrier knew or should have known from the language

-13-

of the statute that he had to establish Foulk's failure to exhaust available administrative remedies.  On that particular issue, Charrier did nothing more than elicit the following testimony from Foulk on cross-examination.

Q.	Now as to the application of the pepper spray in that incident on the 22nd, you never filed any grievance, did you?

A.	Yes, I filed an IRR.

Q.	Now what's an IRR?

A.	It's an informal resolution request.

Q.	That's not the same thing as a grievance, is it?

A.	I filed that July '94.

Q.	The IRR?

A.	Yes.

Q.	But you haven't – my question is you haven't filed a grievance on this?

A.	I have to wait to get the – I had to wait to get the response of the IRR back before I could file a grievance.  I never did receive a response to the IRR.

Q.	Can't you follow up on why you haven't received a response to the IRR?

A.	No, you cannot.

Q.	You can't file a grievance on that?

A.	You can request an emergency grievance, but the grievance officers, they, more than likely or most times, they refuse that and which –

Q. But as to this particular claim that you're making against Lieutenant Charrier today, you have not filed a grievance, have you?

A. I was transferred from Moberly to Jeff City.

Q. I understand that but –

A. Excuse me, I never did receive – I waited the response from the IRR and Moberly never did, you know, furnish me with or supply me with the response to the IRR.

Q. But my question is, as to the claim you're making today, you have never filed a grievance on this matter, have you?

A. No.

MR. JOHNSON: No further questions, Your Honor.

Trial Transcript, Vol. II, at 187-88.

In other words, Charrier merely established that Foulk filed an IRR, MDOC failed to respond, and Foulk thereafter did not file a grievance or a grievance appeal. Foulk's testimony further indicates, however, that MDOC's failure to respond to his IRR precluded him from filing a grievance (although he may have been able to request an "emergency grievance," the meaning of which is nowhere explained). Thus, Foulk's testimony suggests that he had exhausted his available administrative remedies because, once MDOC failed to respond to his IRR, no further administrative proceedings were "available" to him. Cf. Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[§ 1997e(a)] does not require exhaustion of *all* remedies; it requires the exhaustion of 'such administrative remedies as are available.'"). Charrier points to no evidence in the trial record which establishes that Foulk could indeed have filed a grievance despite

-15-

MDOC's failure to respond to his IRR.[7] Charrier's reliance upon a wholly unrelated district court case, <u>Smith v. Stubblefield</u>, 30 F. Supp. 2d at 1174, does not establish the administrative rules applicable to Foulk at the time and place, and under the circumstances, of his incarceration. Consequently, the district court lacked a sufficient factual basis on which to find that Foulk did, in fact, fail to exhaust his administrative remedies. We therefore hold that the district court did not err in declining to dismiss Foulk's excessive force claim for failure to exhaust administrative remedies, as required under the PLRA.

*Evidentiary rulings*

We now turn to Charrier's arguments related to the trial proceedings. Charrier argues that the district court abused its discretion under Fed. R. Evid. 609(a)(1)[8] and

---

[7]Nor has Charrier attempted to supplement the record with such evidence, either before the district court in support of his post-trial motion for judgment as a matter of law, or before this court in support of his brief on appeal.

[8]Rule 609(a)(1) provides:

(a) **General rule.** For the purpose of attacking the credibility of a witness,

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused[.]

-16-

Fed. R. Evid. 403,[9] in excluding evidence showing the specific nature of Foulk's prior felonies, which Charrier sought to introduce to impeach Foulk. Brief for Appellant at 40-50 (No. 00-1132). The district court allowed Charrier to show that Foulk had been convicted of two felonies, sentenced to twenty years imprisonment, and incarcerated since 1985.[10] However, over Charrier's objection, the district court disallowed evidence that Foulk's two felony convictions were for rape and sodomy.[11] Charrier argues on appeal that the jury's assessment of Foulk's credibility was critical to the outcome of the trial and that the nature of Foulk's prior convictions for rape and sodomy would have been particularly helpful to that assessment. Moreover, Charrier argues, the likelihood of unfair prejudice resulting from such evidence was not significant because the evidence could not have been used to show a propensity to commit the same crime twice and because the jury already knew that Foulk was a convicted felon. Charrier suggests that a limiting instruction could have addressed any potential for unfair prejudice. In support of this argument, Charrier primarily relies upon this court's decision in <u>Cummings v. Malone</u>, 995 F.2d 817, 825 (8th Cir. 1993) (<u>Cummings</u>) (reversing and remanding for new trial on prisoner's Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983 in part because district court abused its discretion in excluding evidence regarding the plaintiff's prior felony convictions).

---

[9]Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[10]According to the record, Foulk was serving two consecutive ten-year sentences and had completed the first in 1991, less than ten years prior to the trial in the present case. <u>See</u> Trial Transcript, Vol. I, at 15. Therefore, neither conviction was more than ten years old, for purposes of applying Fed. R. Evid. 609(a)(2).

[11]Neither of Foulk's prior felonies was a crime involving dishonesty or false statement, which would have rendered them admissible under Fed. R. Evid. 609(b).

We disagree with Charrier's contention that the district court's ruling in the present case was inconsistent with <u>Cummings</u>. To begin, this court expressly acknowledged in <u>Cummings</u>, <u>id.</u> at 826, that "the trial judge has discretion under Rule 403 to limit inquiry into past convictions, and in an appropriate case might exclude the names of the specific crimes under Rule 403." <u>Cf.</u> <u>United States v. Ford</u>, 17 F.3d 1100, 1103 (8th Cir. 1994) ("It was within the district court's discretion to conclude that the nature of [the witness's] sexual offense might inflame the jury. The introduction of [the witness's] specific felony could easily have distracted the jury from its task without adding any real probative information to their deliberations.") (citing <u>Cummings</u>, 995 F.2d at 826). Moreover, this court held in <u>Cummings</u>, 995 F.2d at 825-27, that the district court had abused its discretion in excluding evidence showing the specific nature of the plaintiff's prior felony convictions where the plaintiff had testified at trial, the jury's assessment of that credibility was "paramount" to the outcome of the case, *and* such evidence would have revealed prior inconsistent statements made by the plaintiff. The evidence in question in the present case was not similarly probative on the issue of credibility. Furthermore, in <u>Cummings</u>, this court specifically expressed uncertainty as to whether the district court had carefully weighed the probative value of the convictions against the potential for prejudice. <u>See</u> <u>id.</u> at 826 & n.3. By contrast, the record reveals in the present case that the district court carefully performed that duty. <u>See</u> Trial Transcript, Vol. I, at 13-17; Vol. II, at 61-62, 134-36. We therefore hold that the district court did not abuse its discretion in excluding evidence regarding the specific nature of Foulk's prior felonies.

Charrier also argues that the district court improperly limited the number and type of documents he was allowed to introduce into evidence. Brief for Appellant at 59-63 (No. 00-1132). Charrier acknowledges that the district court had broad discretion in restricting the presentation of evidence to prevent undue delay, waste of time, and duplication. However, Charrier argues, the district court abused that discretion by limiting him to one medical document regarding Foulk's injuries and one MDOC record for each of Foulk's conduct violations.

Upon review, we conclude that Charrier was given ample opportunity to establish the facts covered by the excluded documents through the testimony of MDOC employees and officials.  We therefore hold that the district court did not abuse its discretion in restricting Charrier's presentation of documents.  See United States v. York, 830 F.2d 885, 889 (8th Cir. 1987) (per curiam) (exclusion of FBI administrative reports was not a clear abuse of discretion where appellants had been allowed to explore the matter covered by the reports through witness testimony and to introduce other documents which were duplicative of the excluded reports), cert. denied, 484 U.S. 1074 (1988).

*Nominal damages instruction*

Charrier further maintains that the district court erred in instructing the jury that they could award nominal damages in the present case.  Brief for Appellant at 51-58 (No. 00-1132). The district court gave the following instruction:  "If you find in favor of plaintiff, but you find that plaintiff's damages have no monetary value, then you must return a verdict for plaintiff in the nominal amount of one dollar."  Trial Transcript, Vol. III, at 207.  As previously stated, the jury awarded Foulk $1.00.

Charrier argues on appeal that, to the extent this court has previously held that nominal damages are available for Eighth Amendment violations, such cases should now be overruled because they are contrary to Supreme Court's holding in Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of force, provided not of a sort "repugnant to the conscience of mankind").[12]  Charrier argues

[12]The law is well established that this court may not overrule one of its prior decisions unless it does so *en banc*.  See, e.g., Minnesota Citizens Concerned for Life

-19-

that "[n]ominal damages, by definition, can only be *de minimis*. Where the degree of harm from a use of force is insufficient to support a finding of damages in more than the nominal amount of one dollar, the use of force can only have been *de minimis*." Brief for Appellant at 54 (No. 00-1132). Conversely, he argues, if the use of force was more than *de minimis*, then the evidence would support actual damages – thus obviating any need for a nominal damages instruction. Id. at 54-55. We disagree.

An injury warranting nominal damages is not necessarily the result of a *de minimis* use of force. Stated differently, it is possible for a use of force to be excessive and in violation of the Eighth Amendment, and yet result in injury having no or only nominal monetary value. As we explained in Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994) (internal citation omitted):

> Although *de minimis* uses of physical force are not proscribed by the Eighth Amendment unless they are "repugnant to the conscience of mankind," whether the Eighth Amendment was violated turns on "whether force was applied . . . maliciously and sadistically to cause harm," not whether a serious injury resulted from that force. Simply put, force that is excessive within the meaning of the Eighth Amendment is compensable if it causes the prisoner actual injury, even if the injury is not of great significance.

We therefore hold that the district court did not err in permitting the jury to award nominal damages in the present case.

*Sufficiency of the evidence*

---

v. Federal Election Comm'n, 113 F.3d 129, 131 (8th Cir. 1997) (noting that overruling a prior decision of the court is "an action that may only be taken by the court *en banc*").

Charrier argues that the district court erred in denying his post-trial motion for judgment as a matter of law because Foulk failed as a matter of law to establish a *prima facie* case of excessive use of force in violation of the Eighth Amendment. Brief for Appellant at 26-39 (No. 00-1132). Charrier maintains that, even viewing the evidence in the light most favorable to Foulk, no reasonable jury could conclude that: (1) Charrier had applied force maliciously and sadistically for the very purpose of causing harm; (2) he had not acted in good faith and his use of the pepper spray was not necessary and appropriate under the circumstances; or (3) Foulk had suffered an actual injury. Alternatively, Charrier argues that the district court should have granted him judgment as a matter of law because Foulk failed to defeat his qualified immunity defense. At the time of the underlying events, Charrier contends, an objectively reasonable official would not have known that his conduct violated a clearly established constitutional right.

According to Foulk's testimony, he was being compliant, and the door was locked, when Charrier enticed him to put his face up to the screened window. Charrier then sprayed pepper spray directly into Foulk's face. Foulk testified that he could not see, his eyes, nose, and mouth were burning, and he felt as though he were choking. Moreover, contrary to Charrier's contention that Foulk suffered "only temporary discomfort for a matter of minutes," Brief for Appellant at 39 (No. 00-1132), Foulk testified that, because he received no medical care and had no ability to wash off the pepper spray, he continued to feel its painful effects for several days. In light of this testimony, and other aspects of the evidence at trial,[13] we agree with the district court

---

[13]For example, Theresa Thornburg, the associate superintendent of inmate management at MCC, testified at trial that, prior to preparing a "use of force" report, she reviewed a videotape of at least part of the confrontation between Foulk and the corrections officers, including Charrier. See Trial Transcript, Vol. III, at 50-80 (testimony of Theresa Thornburg). Based upon her review of the videotape, she concluded that the officers had acted appropriately. However, she admitted that the

that a reasonable jury could have concluded that Charrier acted maliciously, sadistically, and with the intent to cause injury, and that Foulk suffered an actual injury. Moreover, the district court did not err in declining to grant judgment as a matter of law based upon Charrier's qualified immunity defense. By June of 1994, the law was well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause. See Hudson v. McMillian, 503 U.S. at 9-10.

We therefore hold that the district court did not err in denying Charrier's motion for judgment as a matter of law based on insufficiency of the evidence.

*Award of attorney's fees*

Finally, Charrier and the United States (together appellants), argue that the district court violated the attorney's fees provision of the PLRA, 42 U.S.C. § 1997e(d)(2), in awarding attorney's fees greater than 150% of the $1.00 nominal damages award. As previously noted, § 1997e(d)(2) states:

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

In considering the applicability of § 1997e(d)(2) to the present case, the district court relied on Boivin v. Merrill, 66 F. Supp. 2d 50 (D. Me. 1999), rev'd sub nom.,

---

videotape had been destroyed or taped over, and she explained that it had not been preserved because it showed nothing unusual. Id. at 53.

Boivin v. Black, 225 F.3d 36 (1st Cir. 2000),[14] to reason that Congress could not have intended for the 150% attorney's fees cap to apply to nominal damages awards. See Foulk v. Charrier, slip op. at 5-7 (June 8, 2000) (memorandum in support of award of attorney's fees and costs). In light of that holding, the district court declined to make a determination regarding the constitutionality of § 1997e(d)(2) under the equal protection clause. Id. at 7.

On appeal, appellants emphasize that the district court decision in Boivin v. Merrill has since been reversed by the First Circuit, which held that § 1997e(d)(2) does apply to nominal damages awards. Boivin v. Black, 225 F.3d at 40-41. Appellants also defend the constitutionality of § 1997e(d)(2) under the equal protection clause, arguing that an attorney's fees cap is rationally related to the government's interests in discouraging lawsuits that are frivolous or based on trivial harms, and in preventing the award of windfall attorney's fees out of government resources. Appellants suggest that § 1997e(d)(2), among other provisions of the PLRA, was adopted in recognition of the overly litigious nature of prisoners who have relatively few living expenses, have plenty of free time, are relatively unaffected by external or societal constraints on filing frivolous lawsuits, and arguably tend to file frivolous lawsuits because it allows them to spend time in court and to harass or inconvenience prison employees and officials. The attorney's fees cap, appellants contend, counteracts the litigious nature of prisoners by making it difficult for them to retain attorneys to file weak or frivolous claims and by deterring both retained and appointed attorneys from pursuing weak or frivolous claims. See id. at 41-46.

---

[14]The district court's decision in Boivin v. Merrill was reversed by the First Circuit on September 5, 2000, approximately three months after the district court filed its order awarding attorney's fees in the present case.

In response, Foulk argues that the reasoning by the district court in <u>Boivin v. Merrill</u> remains sound, and the award of attorney's fees in the present case can be upheld on the ground that a nominal damages award is not a "monetary judgment" but rather the vindication of an important constitutional right. He further contends that, consistent with the reasoning of the district court in <u>McKinnon v. Russell</u>, 108 F. Supp. 2d 842, 849-53 (S.D. Ohio 1999), this court could read the second sentence of § 1997e(d)(2)[15] as referring *only* to cases where the award of attorney's fees is "not greater than 150 percent of the judgment." In cases where the attorney's fees award is greater than 150% of the judgment, he argues, the statute is arguably silent, and pre-PLRA standards should continue to apply. Finally, Foulk argues that, if § 1997e(d)(2) can be read to impose a cap on attorney's fees at $1.50 in a case such as this, then it violates the equal protection clause. Foulk explains that, unlike filing fees which make a prisoner think twice before *filing* a lawsuit, an attorney's fees cap has no impact on the filing decision of a *pro se* litigant, who may or may not later receive an appointment of counsel. Furthermore, he explains, while the attorney's fees cap may have a small impact on the few lawyers who are consulted before a prisoner lawsuit is filed, those attorneys already face many other disincentives to filing frivolous claims, such as Fed. R. Civ. P. 11, the prevailing party standards under <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 443 (1983) (extent of success is a crucial factor in determining fee), and <u>Farrar v. Hobby</u>, 506 U.S. 103, 115 (1992) (reasonable fee for recovering nominal damages is usually no fee at all), and the proportionality standard in the PLRA, 42 U.S.C. § 1997e(d)(1)(B)(i). Therefore, he concludes, the attorney's fees cap is not *rationally related* to a legitimate governmental interest.[16]

---

[15]"If the award of attorney's fees is not greater than 150 percent of the judgment the excess shall be paid by the defendant."

[16]This court has held that § 1997e(d)(2) applies to all hours worked by an attorney after the date of the enactment of the PLRA. <u>See, e.g.</u>, <u>Williams v. Brimeyer</u>, 122 F.3d 1093, 1094 (8th Cir. 1997). In the present case, Foulk's attorneys were

-24-

"We review claims of constitutional error and issues of statutory construction *de novo*." United States v. Allen, 247 F.3d 741 (8th Cir. 2001). On the issue of whether an award of nominal damages is a "monetary award" under § 1997e(d)(2), we agree with the reasoning and conclusions of the First Circuit in Boivin v. Black, 225 F.3d at 40-46. Exempting nominal damages awards from the statute could, as the First Circuit explained, lead to absurd results. See id. at 41. Moreover, including nominal damages awards within the statute's reference to "monetary awards" is consistent with that term's plain and ordinary meaning and Congress's apparent intent. See id. at 40-41.[17]

We also reject Foulk's argument that the statute should be read literally as having no effect if a court were to award attorney's fees in an amount greater than 150% of the monetary judgment. As the Sixth Circuit explained in Walker v. Bain, Nos. 99-2001, 99-2004, 99-2349, 2001 WL 823612, at *4, __ F.3d __, __ (6th Cir. July 20, 2001), "[w]hile [plaintiff's] interpretation of § 1997e(d)(2) is consistent with the literal language of the statute, it is inconsistent with the intent of Congress, renders the second sentence of the provision meaningless, and must therefore be rejected."

Finally, we agree with the majority of circuits which have confronted the equal protection issue and have held that the PLRA's attorney's fees cap passes constitutional muster. See, e.g., Walker v. Bain, 2001 WL 823612, at *7, __ F.3d at __; Boivin v. Black, 225 F.3d at 41-46; Madrid v. Gomez, 190 F.3d 990, 996 (9th Cir. 1999);

---

appointed in 1997, after the PLRA's enactment on April 26, 1996. Therefore, Foulk makes no retroactivity argument vis-a-vis the PLRA's attorney's fees provision.

[17]However, if non-monetary relief is ordered (whether with or without a monetary award), the attorney's fees cap in 42 U.S.C. § 1997e(d)(2) does not apply. See Walker v. Bain, Nos. 99-2001, 99-2004, 99-2349, 2001 WL 823612, at *5 n.2, __ F.3d __, __ (6th Cir. July 20, 2001); Boivin v. Black, 225 F.3d 36, 41 n.4 (1st Cir. 2000).

<u>Collins v. Montgomery County Bd. of Prison Inspectors</u>, 176 F.3d 679, 686 (3d Cir. 1999) (en banc) (per an equally divided court), <u>cert. denied</u>, 528 U.S. 1115 (2000).

As the Sixth Circuit aptly explained:

> We are aware that § 1997e(d)(2) will have a strong chilling effect upon counsels' willingness to represent prisoners who have meritorious claims. We are also mindful that the "marginal or trivial" claims that result in a judgment for a prisoner, such as [Foulk], do in fact arise out of an actual, proven civil rights violation. We admit to being troubled by a federal statute that seeks to reduce the number of meritorious civil rights claims and protect the public fisc at the expense of denying a politically unpopular group their ability to vindicate actual, albeit "technical," civil rights violations. However, we are aware that we are not authorized to act as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. Moreover, our role is not to judge the wisdom, fairness, or logic of legislative choices. Accordingly, we must conclude that § 1997e(d)(2) survives rational review.

<u>Walker v. Bain</u>, 2001 WL 823612, at *7, __ F.3d at __ (internal citations and quotation marks omitted).

We therefore hold that the district court erred in failing to apply § 1997e(d)(2) in awarding attorney's fees in the present case.[18] Foulk is entitled to no more than $1.50 in attorney's fees.

---

[18]We need not reach Charrier's alternative argument that, even if 42 U.S.C. § 1997e(d)(2) does not apply in the present case, the district court's award of attorney's fees was an abuse of discretion under 42 U.S.C. § 1988.

**Conclusion**

For the reasons stated, we vacate the order of the district court awarding Foulk attorney's fees and costs, and we remand the case to the district court to redetermine the award of attorney's fees and, if necessary, costs. In all other respects, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.