# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3866

_____

Laura L. Johnson,

        Plaintiff,

Patti E. Johnson,

        Plaintiff-Appellant,

        v.

Kevin Blaukat, Don Broers, Jeff Carr, Terry Moback, Sergeant Jeannette Riley, Melissa Roughton, Matt Terry, John Does, 1-5, Jasper County, Craig Preacher, Denita Douglas,

        Defendants - Appellees.

Appeal from the United States District Court for the Western District of Missouri.

_____

Submitted: April 21, 2006
Filed: June 27, 2006

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Patti E. Johnson, an inmate at the Jasper County Detention Center (the Detention Center), brought this action under 42 U.S.C. § 1983 against individual

correctional officers and Jasper County, alleging that her constitutional rights were violated by the use of excessive force against her on June 13, 2003. The district court granted summary judgment to the defendants, and Johnson appeals. We affirm in all respects except for the claims against Matt Terry and Denita Douglas which we remand.

Patti Johnson (Johnson), her sisters Laura Johnson (Laura) and Stacey Hall, and Karen Mitchell were incarcerated at the Detention Center. Staff decided to to put the four women in lockdown[1] on June 13, 2003 after receiving complaints that they had been bullying other inmates. Officer Matt Terry announced the lockdown order while they were in the common room. The four women were upset by the order, and Johnson admits that she did not initially cooperate with it. She asked to speak with Sergeant Jeannette Riley, and Terry radioed Sergeant Riley for assistance. Other prison officials also came to the scene, among them Officers Eaton, Douglas, and Roughton.

What happened after the sisters returned to their cell is the focus of Johnson's claim for excessive force. We recount these facts in the light most favorable to Johnson as we should when reviewing summary judgment. Johnson produced evidence that after they all reentered their cell, Laura banged a shampoo bottle on the desk and threw toilet paper at the wall. Several officers decided to enter the cell. As some of them moved towards Laura who was in the back of the cell, Johnson stepped in front of Sergeant Blaukat and asked him not to touch her sister, assuring him that the cellmates would be able to calm her down. Sergeant Blaukat told Johnson to move, but she did not. At this point Terry tackled Johnson to the floor and tried to handcuff her. He was able to cuff one of her hands and struggled to get the other one. According to her evidence, Johnson tried to produce her other hand for cuffing but it

---

[1]Lockdown is a disciplinary action which confines inmates to their cell for twenty three hours a day.

was caught underneath her. She could not pull the hand out because Officers Terry, Douglas, and Roughton had piled on top of her. Even though Johnson explained that her hand was stuck, Terry placed an Orcutt Police Nonchaku (OPN)[2] around her neck and choked her, twisting the device until it broke. She testified that her head was slammed down on the floor, that her hair was pulled, and that Douglas sprayed mace on her face and eyes. Johnson claims that she sustained injuries from the incident, including bruising and lacerations on her arms, a broken thumb, and two black eyes. Johnson admits that after the incident Terry gave her a cold towel and she was taken to the shower. Some supervisors were present at the scene, including Captain Carr, Lieutenant Moback, and Sergeants Blaukat and Riley.

The testimony of the officers varied from Johnson's account. Terry stated that Laura was throwing objects around the cell, that Johnson lunged at one of the deputies who was trying to restrain Laura, and that Douglas handcuffed one of Johnson's wrists but could not cuff the other because Johnson kept turning. Terry testified further that after he wrestled Johnson to the ground, she continued to resist and locked her hands under her stomach. He then used the OPN on her forearm to try to open her hand and one of the plastic sticks broke. Roughton testified that she had assisted in restraining Laura, but not Johnson.

Johnson and her cellmates brought this civil action under 42 U.S.C. § 1983 and state law, asserting that their rights had been violated by the use of excessive force, deliberate indifference, and retaliation. All of the claims except the Johnsons' excessive force claims were voluntarily dismissed, and the district court granted summary judgment to the defendants on those claims. Only Johnson appeals.

---

[2]The record indicates that an OPN is a device similar to a numchuck, which consists of two polycarbonate sticks connected by a rope.

On defendants' motion for summary judgment, all disputed facts and the inferences that could be drawn from them were to be viewed in the light most favorable to Johnson. See Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002). The district court determined that Johnson had made no factual allegations of excessive force against defendants Kevin Blaukat, Don Broers, Jeff Carr, Terry Moback, Craig Preacher, Jeannette Riley, and Jasper County and granted them summary judgment. In its opinion the district court discussed Johnson's claims against Matt Terry, Denita Douglas, and Melissa Roughton at greater length.

The district court cited Johnson's deposition testimony regarding her reason for approaching the guards as they entered the cell:

> It was Captain Blauket[3] and Matt Terry was the first ones through that door because I stepped in front of Mr. Blauket to keep him from getting to Laura, and I did – I said, Look, you're not putting your hands on my sister, and he told me, I'm not going to hurt her. I said, You're not putting your hands on my sister. All you have to do is step back out and shut that door and we'll calm her down. You know, she's just upset. And then after that I was hit. I mean hit like a football player. Matt Terry was the first one that hit me, and I fell to the floor.

The district court found from the evidence that Johnson had "*clearly* tried to step in and physically prevent the officers from doing their job." The court went on to say that "*[i]t is not an unreasonable inference to find that Plaintiff was actively resisting* the efforts of the officers" (emphases added). In the district court's view the use of force was "quite limited" and "not done in a malicious or sadistic manner." The court said that it "[did] not find that Plaintiff has established that the use of force was anything more than a good faith effort to maintain and restore discipline" and concluded that Johnson had not presented sufficient evidence of wanton infliction of

---

[3]Kevin Blaukat was a Sergeant when the incident took place but had been promoted to Captain by the time this action was filed.

pain to allow the case to reach a jury. It closed by granting summary judgment to the three remaining officers.

On appeal Johnson argues that the district court improperly construed the evidence in a light favorable to the moving parties instead of her. She asserts that the record demonstrates that she had an actionable claim based on the officers' elective and avoidable use of force in violation of a number of Detention Center policies. She points out that the officers only entered the cell after the door had been shut, that they admitted they did not have concerns about their safety or that of other inmates, that they applied severe force, and that she suffered actual injuries. Appellees[4] respond that summary judgment was appropriate because Johnson posed a risk to safety and security since she had not initially complied with the lockdown order, had intentionally interfered with their actions, and had failed to produce her hand for cuffing. They say that the use of force against Johnson was only intended to restrain her rather than to cause her harm and that there was no evidence of malice. Johnson responds that malice was shown by Captain Carr's order to remove personal hygiene items from the cell to which she was moved even though she was menstruating at the time and by his directing a racial epithet at Karen Mitchell.

We review a grant of summary judgment de novo. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995). The evidence and all fair inferences from it must be viewed in the light most favorable to the non moving party, and summary judgment is appropriate if there is no genuine issue of material fact when the evidence is considered under that standard. See id.; see generally Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

---

[4]Officer Terry's name is not included on the brief filed by counsel for the appellees.

The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). Officers may reasonably use force in a "good-faith effort to maintain or restore discipline" but may not apply force "maliciously and sadistically to cause harm." Id. at 7. The test for reasonableness or good faith application of force depends on "whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (citing Hudson, 503 U.S. at 7).

The Detention Center has regulations restricting the use of force and the use of pepper spray. Force may be used by officers "to defend themselves or another person or to subdue a resisting subject." Regulation on Use of Force, No. 2-3, at IV.A.1. (Jasper Cty. Sheriff's Dep't, April 19, 1990) [Detention Center Force Regs.]. Mace may be used for "self-defense, defense of a third person, or to subdue a violently resisting subject", but it may not be used to "threaten, to elicit information or persuade people to comply with orders" if the individual is handcuffed or properly in custody. Detention Center Force Regs. at IV.C. The pepper spray regulation states that pepper spray may be used when "the aggressor has failed to comply with the Deputie's [sic] verbal instructions" and the aggressor has been issued a warning that the spray will be used, but it may not be used "in anticipation against mere verbal threats of violence or resistance". Regulation on Use of OC/Pepper Spray, No. 2-21, at III. (Jasper Cty. Sheriff's Dep't, May 15, 1997).

According to Johnson, force was applied in violation of these policies at a time when she was not resisting the officers. She testified that she had gone back to her cell and was trying to calm and protect her sister Laura who had just banged the shampoo bottle on the desk. Then she was suddenly thrown to the floor and buried under three correctional officers, choked, and maced without warning. Her head was

banged against the floor while she was trying to comply with the order to produce her second hand after the other one had already been cuffed. She claims that her injuries included a broken thumb and two black eyes. While she was given a towel and taken to the shower after the incident, she was also deprived of hygiene products even though she was menstruating.

Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that "turns on the circumstances of the individual case or the particular 'prison setting.'" Treats, 308 F.3d at 872 (quoting Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000)). An application of pepper spray when an inmate is being compliant can provide a basis for an Eighth Amendment claim. See Foulk v. Charrier, 262 F.3d 687, 702 (8th Cir. 2001).

The trier of fact might well come to agree with the district court's assessment of the evidence, but the court erred by finding facts in favor of the defendants on disputed material issues. Instead of viewing the contested facts in favor of Johnson, the district court drew inferences in favor of Terry and Douglas, finding that their actions were done in "good faith" and were "quite limited". Particularly when considering such fact specific issues, see Treats, 308 F.3d at 872, it is important that a court adhere to the summary judgment standard, which requires that the court "view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc., 382 F.3d 852, 855-56 (8th Cir. 2004) (citing Matsushita, 475 U.S. at 587).

Although force may be used by correction officers in a good faith effort to maintain discipline, see Hudson, 503 U.S. at 7, we conclude that in this record there are several material questions of fact about whether Officers Terry and Douglas used excessive force, including whether their acts were defensive in nature, as required by the Detention Center policy, or motivated by anger; whether they were necessary to maintain order or were excessive reactions by frustrated officers; and whether the

amount of force used was commensurate with the situation. Additional material issues include whether or not Johnson failed to comply with orders given by officers in the cell, whether she was actively resisting them, whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before application of the pepper spray, and whether Johnson suffered real injuries. The factors outlined in Hudson and Treats could be weighed by a trier of fact in favor of Johnson or the officers, and a jury could find that force was applied to Johnson maliciously and sadistically. We conclude that summary judgment should not have been granted to Terry and Douglas, because Johnson produced evidence sufficient to withstand summary judgment on her claim that they applied excessive force.

Although Johnson appeals the entire grant of summary judgment, the only officers she cites by name for having used physical force against her are Terry, Douglas, and Roughton. We conclude that the evidence as to Roughton was insufficient to sustain an excessive force claim, and Johnson does not make specific allegations of excessive force against the other remaining officers. The district court did not err in dismissing them.

Johnson asserts that the court erred by ruling in favor of the officers with supervisory authority – Captain Carr, Lieutenant Moback, Sergeant Blaukat, and Sergeant Riley – because they witnessed the actions of their subordinates and failed to stop them. Appellees respond that there is no respondeat superior liability under § 1983 and that there is no basis for a deliberate indifference claim against them. Supervisors can be individually liable if they directly participate in a constitutional violation or if they failed to supervise and train officers. See Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). Johnson's allegations against Captain Carr are that he used a racial epithet against Mitchell and ordered her hygiene items removed; they do not support an Eighth Amendment claim against him. Johnson provided no evidence that the supervisors were deliberately indifferent or tacitly authorized any

excessive force used, see id., or that there was inadequate training or supervision. For these reasons the supervisors were appropriately granted summary judgment.

Finally, we address the district court's grant of summary judgment in favor of Jasper County. A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice. See Monell v. Dep't of Soc. Servs of the City of New York, 436 U.S. 658, 690-91 (1978). Although Johnson claims that the county's policies were violated in numerous ways, she does not allege that any of the policies are themselves unconstitutional. We conclude that the district court did not err in granting summary judgment in favor of the County.

After a thorough review of the record, we reverse the summary judgment as to Officers Terry and Douglas and remand the claims against them for trial and we affirm the judgment of the district court dismissing the claims against all other defendants.

GRUENDER, Circuit Judge, concurring.

I concur in the judgment of the Court, but wish to emphasize that the corrections officers were justified in using some force to restore discipline due to Johnson's initial resistance. Johnson testified in her deposition that she stepped in front of Sergeant Blaukat and told him not to touch her sister, that Blaukat responded by telling Johnson to move and that he was not going to hurt Laura, and that Johnson refused to comply. Accordingly, I see no error in the district court's statement that Johnson "clearly tried to step in and physically prevent the officers from doing their job." Because Johnson stepped in front of an officer during a tense situation and failed to comply with his verbal order, the corrections officers were justified in using some level of force in order to control the situation. *Cf. Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) ("Our review of the law shows that summary applications of

force are constitutionally permissible when prison security and order . . . has been placed in jeopardy.").

I find that summary judgment was not appropriate in this case because there are genuine issues of material fact regarding what happened after the initial use of force against Johnson. As the Court found, there are disputed issues of material fact as to whether Johnson continued to resist and whether the force applied was excessive. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986) (describing as a relevant factor the relationship between the need for force and the amount of force used). Thus, a rational jury could find an Eighth Amendment violation after determining these facts.

_____