# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1813

_____

Edward V. Lawrence; Dennis
Kirksey,

        Plaintiffs/Appellees,

    v.

Michael Bowersox; Gloria Gourley;
Donna McCondichie; Carl McCory,
C.O. II;

        Defendants/Appellants,

James W. Lawrence, individually and
in his official capacity as a Corrections
Officer and member of the Emergency
Squad at the Potosi Correctional
Center; Billy Nipper, individually and
in his official capacity as a Corrections
Officer and a member of the Emergency
Squad at the Farmington Correctional
Center;

        Defendants,

Thomas Hays, individually and in his
official capacity as a Corrections
Officer and member of the Emergency
Squad at the Farmington Correctional
Center;

Appeal from the United States
District Court for the Eastern
District of Missouri.

<table>
<tr><td style="text-align:center">Defendant/Appellant,</td><td>*</td></tr>
<tr><td></td><td>*</td></tr>
<tr><td>Arthur Holms, individually and in his</td><td>*</td></tr>
<tr><td>official capacity as a Corrections</td><td>*</td></tr>
<tr><td>Officer and member of the Emergency</td><td>*</td></tr>
<tr><td>Squad at the Farmington Correctional</td><td>*</td></tr>
<tr><td>Center; Alton Thompson, individually</td><td>*</td></tr>
<tr><td>and in his official capacity as a</td><td>*</td></tr>
<tr><td>Corrections Officer and member of the</td><td>*</td></tr>
<tr><td>Emergency Squad at the Farmington</td><td>*</td></tr>
<tr><td>Correctional Center,</td><td>*</td></tr>
<tr><td></td><td>*</td></tr>
<tr><td style="text-align:center">Defendants.</td><td>*</td></tr>
</table>

_____

Submitted:  December 14, 2001

Filed:  July 22, 2002
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.
_____

BEAM, Circuit Judge.

Prison inmates Edward V. Lawrence and Dennis Kirksey won a $10,002 jury verdict against Corrections Officer Thomas Hays arising out of a pepper spraying incident at the Potosi Correctional Center.  The district court[1] denied Hays' motion for judgment as a matter of law.  The district court also awarded discovery sanctions in the amount of $8,712.19 against Hays and several other corrections officials for discovery misconduct during the course of this litigation.  Finally, the district court

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

granted the inmates' motion for attorneys' fees and costs ($15,000 for fees and $4,397.40 for costs). We affirm the denial of the motion for judgment as a matter of law and the discovery sanctions. We affirm the award of attorneys' fees and costs, but remand for a recalculation of the fees consistent with the requirement that a percentage of the judgment be applied to the fee award pursuant to the Prison Litigation Reform Act.

## I.     BACKGROUND

### A.     The Pepper Spraying Incident

On June 10, 1996, a riot broke out in Housing Unit 3B of the Potosi Correctional Center ("PCC"). The riot was quelled quickly, and all inmates were returned to their cells. After the unit was secure, a cell-by-cell search for weapons and contraband was ordered. Special units of corrections officers trained to handle riots, known as Emergency Squads ("E-Squads"), were activated and instructed to impose Temporary Administrative Segregation Confinement ("TASC") on the inmates. When a TASC order is given, each inmate is strip-searched, handcuffed, and his cell is searched for weapons and contraband.

Approximately five hours after the riot, a search team led by Hays arrived at Lawrence and Kirksey's cell. Hays called out, "Niggers get naked." Lawrence responded by asking, "What did you say?" Hays reacted to this question by calling for a movement team, and E-Squad Officer Carl McCory immediately sprayed Lawrence and Kirksey with pepper spray, using a device known as a MK-46. The Superintendent of PCC at the time of the incident, Michael Bowersox, testified that a MK-46 consists of a twelve to fourteen-inch wand attached to a large cannister, and resembles a fire extinguisher. Lawrence and Kirksey, along with the entire interior of their cell, were soaked with pepper spray from the MK-46. After approximately ten minutes of inhaling the chemical agent, Lawrence and Kirksey were removed

from their cell and taken to the showers to clean up. Lawrence testified that the incident resulted in intense burning on his skin for several days after the event.

### B.    Procedural History

In the inmates' Second Amended Complaint, they alleged that their Eighth Amendment rights were violated when: (1) McCory unnecessarily sprayed them with a chemical agent while they were confined in their cell; and (2) corrections officials Bowersox, Hays, Gloria Gourley, Donna McCondichie, James W. Lawrence, Billy Nipper, Arthur Holms, Alton Thompson, Richard Gaines and Terrence Cole were deliberately indifferent to their safety, because these individuals were present when the unnecessary use of force occurred and failed to prevent it; and (3) that all defendants were deliberately indifferent to Lawrence and Kirksey's serious medical needs, because they required them to return to their cell without first cleaning out the chemicals.

The district court granted summary judgment on Count Three in favor of defendants Lawrence, Nipper, Hays, Holms, Thompson, Gaines and Cole, finding that the inmates had failed to produce sufficient evidence to establish that these defendants were involved after the inmates were removed from their cell.

During the trial, the inmates voluntarily dismissed defendants Gourley, McCondichie, Gaines and Cole. In addition, the district court granted defendant Bowersox's motion for judgment as a matter of law.

On the remaining claims, the jury returned a verdict in favor of the inmates on their claim of deliberate indifference against Hays, awarding them nominal damages (one dollar each) and punitive damages totaling $10,000. The jury found in favor of the defendants on all other claims. The district court denied Hays' motion for

judgment as a matter of law and awarded appointed counsel $15,000 in attorneys' fees and $4,397.40 for costs.

## II.    DISCUSSION

### A.    Hays' Motion for Judgment as a Matter of Law

We review a district court's denial of a motion for judgment as a matter of law de novo.  Van Steenburgh v. Rival Co., 171 F.3d 1155, 1158 (8th Cir. 1999).  We must look at the evidence in the light most favorable to the inmates, give them the benefit of all reasonable inferences, and assume the jury resolved all evidentiary conflicts in their favor.  Id.  We will overturn the verdict only if no reasonable juror could have found in favor of the inmates.  Id.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates."  Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  However, not every injury to a prisoner "translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A prison official is liable for violating the Eighth Amendment in a failure to protect case only when two requirements are met.  First, the inmate must show that he is incarcerated under conditions posing an objectively substantial risk of serious harm.  Id.  Second, the inmate must prove that, subjectively, the prison official was deliberately indifferent to the inmate's health or safety.  Id.

Hays claims that his motion for judgment as a matter of law should have been granted because Lawrence and Kirksey failed to prove the objective prong of the Farmer test.  Hays does not argue on appeal that he lacked the requisite mental culpability that forms the second prong of the Farmer test.  Instead, Hays claims that the inmates suffered only de minimis injuries from the pepper spray, and thus were not subjected to a substantial risk of serious harm.  To support this claim, Hays argues

that his conduct was analogous to the prison official's conduct in Jones v. Shields, 207 F.3d 491 (8th Cir. 2000), where we found that an inmate sprayed with pepper spray did not establish an Eighth Amendment violation. In Jones, an inmate while out of his cell refused a work order and when ordered to his barracks became loud and argumentative. The prison official used pepper spray on the inmate in response to the outburst. Id. at 493. The spray was dispensed in a one-second burst from a small can with a trigger and the inmate testified that the effects of the spray cleared within forty-five minutes. Id. at 494. The court held that the prison official's "administration of [pepper spray] in this prison setting resulted in de minimis injury for Eighth Amendment purposes." Id. at 495.

Jones, however, did not hold that *all* applications of pepper spray result in de minimis injury. Instead, the Jones court reasoned that a factual inquiry should take place "consider[ing] the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred." Id. The facts here are quite different than those in Jones. The inmate in Jones refused direct orders from prison officials to return to his barracks and became threatening. Furthermore, the inmate in Jones was not confined to his cell and was much larger than the prison official who used the spray. Id. at 497. Jones concluded that the limited application of pepper spray was a tempered response when faced with a recalcitrant inmate. Id. at 496. Here, on the other hand, Lawrence and Kirksey were confined to their cell and the evidence does not show that they disobeyed orders.

In addition, while the prisoner in Jones was sprayed with a burst from "a small can with a trigger," id. at 494, the evidence at trial established that Lawrence and Kirksey were doused with pepper spray from a MK-46, which, as previously noted, is a large cannister resembling a fire extinguisher with a twelve to fourteen-inch wand attached. The facts in this case do not support Hays' claim that the inmates suffered de minimis injuries. Unlike in Jones, here, the inmates' faces and bodies were soaked in pepper spray as a result of Hays' call for the movement team. In fact, their entire

cell was covered with the spray. One of the officers even proclaimed: "that is some bad stuff." Kirksey claimed that he experienced spotting on his lower body for almost two years following the incident. Lawrence testified that he has suffered problems with his skin and eyes following the incident. Hays argues that the injury claims by the inmates were refuted by the testimony and records of the nurse who treated them. However, as the inmates' brief correctly points out, quoting Phillips v. Collings, 256 F.3d 843, 847 (8th Cir. 2001), "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Based on the facts adduced at trial, a jury could reasonably conclude that Hays orchestrated a vicious attack on the inmates for no legitimate reason.

Hays also argues that the jury verdict proves that the inmates' injuries were de minimis because it only awarded nominal damages of one dollar per inmate. However, that is not the law of this circuit. As we explained in Howard v. Barnett, 21 F.3d 868, 873 (8th Cir. 1994), "force that is excessive within the meaning of the Eighth Amendment is compensable if it causes the prisoner actual injury, even if the injury is not of great significance." In fact, we have held that "[a]n injury warranting nominal damages is not necessarily the result of a de minimis use of force. Stated differently, it is possible for a use of force to be excessive and in violation of the Eighth Amendment, and yet result in injury having no or only nominal monetary value." Foulk v. Charrier, 262 F.3d 687, 701 (8th Cir. 2001).

Hays claims that even if the inmates successfully demonstrate an Eighth Amendment violation, he is nonetheless entitled to qualified immunity. Government officials have qualified immunity from suit if their conduct does not violate clearly established constitutional rights of which a reasonable person should have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine, however, is of no avail to Hays. It was well-established at the time of Hays' acts that failing to protect inmates from a foreseeable attack violates the Eighth Amendment when an official

is "deliberately indifferent to a substantial risk of serious harm." Estate of Davis v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997) (affirming verdict finding prison officials liable for failing to protect inmates from excessive use of force by another prison official).

Hays argues that Estate of Davis did not clearly establish that his conduct was unconstitutional because in that case a prison official was found liable for using excessive force, whereas here the jury found against the inmates on their claim of excessive force against defendant McCory, who actually sprayed the inmates. Hays argues that it has not been clearly established that he is required to protect an inmate from a colleague's "constitutional" use of force. This argument fails because it ignores the jury instructions provided in this case. In order to find McCory liable for using excessive force, the instructions required the jury to find that the force he used was "excessive *and* applied maliciously and sadistically for the very purpose of causing harm, and not in a good faith effort to achieve a legitimate purpose." Joint Appendix at 497 (emphasis added). In all likelihood, the jury did not find McCory liable because it felt that McCory was simply following Hays' orders, and did not spray the inmates "maliciously and sadistically." McCory testified that he was not even present when Hays said "Niggers get naked." Instead, McCory arrived at the cell with no knowledge of why Hays had called for the movement team. Therefore, a jury finding that McCory was not liable for an excessive use of force does not mean the jury concluded that the entire pepper spraying incident was a constitutional use of force.

In fact, the jury instructions concerning the failure to protect claim against Hays required the jury to first find that "McCory used excessive force," which they did. Joint Appendix at 501. These two findings are entirely consistent. A jury could find that McCory used excessive force on Hays' verdict form, but find in favor of McCory because he did not use such force maliciously and sadistically. Indeed, that appears to be what the jury found. In sum, the fact that the jury did not find McCory

-8-

liable does not establish that Hays is entitled to qualified immunity. Orchestrating an unnecessary pepper spray shower violated clearly established rights of which a reasonable person should have known. Harlow, 457 U.S. at 818.

### B.    Discovery Sanctions

On September 7, 1999, the district court ordered the defendants to produce within ten days the original videotape of the spraying incident, as well as a list of each person who was involved in the use of force. By January 18, 2000, the defendants had not produced an original videotape or any explanation of what happened to the original. Indeed, they never did produce the original.[2] In addition, the defendants continued to change their story with regard to which officials were involved with the use of force and made it exceedingly difficult for the inmates to discover even the most basic facts surrounding the incident. As a result, the district court found that the prison officials had violated the discovery order and granted the inmates' motion for sanctions and awarded them $8,125 in attorneys' fees and $587.19 in expenses.

---

[2]We pause here to note a disturbing tendency by units within the Missouri Department of Corrections to "misplace" videotapes of prison incidents. In addition to the missing original videotape in this case, in Estate of Davis, 115 F.3d at 1392, the court noted that a videotape from the Potosi Correctional Center was "lost after it was forwarded to the Missouri Department of Corrections." Furthermore, in Foulk, 262 F.3d at 702, an official from the Moberly Correctional Center admitted that a videotape had been "destroyed or taped over." We are aware that large bureaucracies cannot have a foolproof system for preserving records. However, three missing videotapes in approximately five years of incidents giving rise to litigation within one prison system strikes us as more than mere coincidence. Perhaps it is time to remind the Missouri Department of Corrections that Rule 37 of the Federal Rules of Civil Procedure allows a court to strike pleadings and enter a default judgment against parties that fail to comply with discovery orders, fail to disclose information required by Rule 26(e)(2), or provide false or misleading disclosures.

The prison officials argue that the award of sanctions should be reversed because it was impossible for them to comply with the district court's discovery order. They claim that they could not determine for certain which tape was the original videotape of the incident, and they could not determine who was present during the use of force. In addition, they argue that the inmates were not prejudiced by their discovery misconduct, and even if they were, the district court permitted recovery for fees not caused by the failure to obey the court's order. These arguments are completely without merit.

We review the imposition of discovery sanctions for an abuse of discretion. Martin v. DaimlerChrysler Corp.. 251 F.3d 691, 694 (8th Cir. 2001). The district court did not abuse its discretion when it ordered the prison officials to pay discovery sanctions. The prison officials provided assurances during the first months of the discovery process that they would produce an original videotape of the incident. They never did. Instead, they produced three separate videotapes that had been conveniently edited. Furthermore, after the September 7, 1999, hearing, the officials located fourteen additional videotapes. Rather than consult with a records custodian to determine which videotape was the original, or at least determine that the original no longer existed, the appellants simply handed over all of the videotapes and made the inmates' counsel do the work. They were needlessly forced to review all of the videotapes and depose several individuals to determine that no PCC official could provide an original of the videotape. This discovery tactic violated the district court's order. At the very least, appellants could have conducted their own investigation to uncover the fact that an "original" videotape no longer existed.

In addition, the appellants failed to timely provide a list of individuals present at the pepper spray incident. The appellants claim that it was impossible for them to produce such a list because certain people did not remember their role in the event. This argument glosses over the fact that appellants simply needed to look at the edited videotapes of the event to determine which officers were present. Alternatively, the

appellants could have conducted their own investigation to determine who ordered the movement team into action. Instead, the prison officials merely provided the inmates with a long list of people who might have been involved in the incident, resulting in needless depositions. This type of conduct violates the letter and spirit of the required disclosures outlined in Rule 26(a)(1). This conduct was also in direct violation of the district court's September 7, 1999, discovery order.

Finally, we think it is clear from the record that the inmates were given the run-around and were forced to take depositions and file motions that would have been unnecessary had the appellants complied with the district court's discovery order. The appellants' protests to the contrary are unpersuasive. The district court based the sanctions on a verified statement from the inmates' counsel that provided information concerning the time and expenses undertaken by them while the prison officials were playing "hide the ball." We do not think that such an award was an abuse of the district court's discretion–it was well within the court's inherent authority to preside over the cases it hears. Martin, 251 F.3d at 694. In fact, we think the district court was generous in foregoing the option to strike the appellants' pleadings and entering a default judgment against the prison officials.

## C. Attorneys' Fees

The district court awarded the inmates $15,000 in attorneys' fees. However, the Prison Litigation Reform Act (PLRA) requires the court to use a portion of the judgment, not to exceed twenty-five percent, to pay attorney's fees. 42 U.S.C. § 1997e(d)(2). The inmates claim that the appellants failed to raise this argument with the district court. In fact, the appellants' response to the inmates' motion for fees raised the PLRA issue in a footnote. Therefore, the district court should recalculate the fees consistent with federal law.

## III.   CONCLUSION

For the reasons discussed, we affirm the denial of the motion for judgment as a matter of law and the award of discovery sanctions.  We affirm the award of attorneys' fees and costs, but remand for a recalculation of the fees consistent with the requirement that a percentage of the judgment be applied to the fee award pursuant to 42 U.S.C. § 1997e(d)(2).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.