# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-3368

_____

Byron Treats,                                    *
                                                 *
         Plaintiff - Appellee,                   *
                                                 *
    v.                                           *
                                                 *  Appeal from the United States
James Morgan, Correctional Officer,              *  District Court for the Eastern
North Central Unit, Arkansas                     *  District of Arkansas.
Department of Correction; J. Beaty,              *
Lt., North Central Unit, Arkansas               *
Department of Correction,                        *
                                                 *
         Defendants - Appellants.                *

_____

Submitted: June 28, 2002
Filed: September 17, 2002

_____

Before HANSEN, Chief Judge, BRIGHT, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.


Byron Treats, an inmate at the Arkansas Department of Correction (ADC), brought this action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was sprayed in the face with capstun pepper spray by correctional officer James Morgan and thrown to the floor by Lieutenant J. Beaty.

The officers appeal from an order of the district court[1] denying their motion for summary judgment based on qualified immunity. We affirm.

Since this interlocutory appeal is from the denial of defendants' motion for summary judgment, we view the facts in the light most favorable to Treats. Lambert v. City of Dumas, 187 F.3d 931, 934-35 (8th Cir. 1999). Treats testified at an evidentiary hearing before a magistrate judge that prison officials removed a radio from his cell on the evening of October 8, 1998. Approximately an hour and a half later, he was summoned to Lieutenant Beaty's office and asked to sign a 401 form acknowledging that the radio had been confiscated. Officer Morgan was on duty at the office and gave Treats the form. Treats signed it, stated that he did not want a copy, and left the office. Morgan followed him and demanded that he take his copy of the form. Treats explained to Morgan that he did not want a copy and that it was not mandatory that he take it. Morgan again told Treats to take the copy. Treats turned to go back to talk with the lieutenant about it, and without any warning Morgan sprayed him in the face with a prolonged burst of capstun pepper spray. Beaty ran out of his office and slammed Treats to the floor, where he was handcuffed. Treats testified that these acts caused pain and frightened and disoriented him. He was taken to the infirmary afterwards where his eyes and skin were flushed with water. Several days later he returned to the infirmary because he was suffering from pain in his ear; he had never had problems with his ears before being sprayed with capstun.

The ADC has regulations which govern the use of force and the use of chemical agents by correctional officers. Admin. Directive on Use of Force, No. 97-01 (Ark. Dept. of Correction, Jan. 16, 1997) ["ADC Force Regs."]; Admin. Regs. on Use of Chemical Agents and Other Non-Lethal Weapons, Section No. 410 (Ark.

---

[1] The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Dept. of Correction, Aug. 25, 1989) ["ADC Chem. Regs."]. They require an officer to warn an inmate and to give him a chance to comply before using any chemical agent on him. ADC Force Regs. at III.C.2.a.; ADC Chem. Regs. at II.B. The regulations state that an officer "may use non-deadly force to compel an inmate to comply with lawful orders when other methods of persuasion are not effective and noncompliance jeopardizes safety and security of the institution." ADC Force Regs. at III.A.5. Chemical agents such as capstun pepper spray may be used "[o]nly when [an] inmate threatens bodily harm to himself/herself, other inmates, or individuals, will not produce an item(s), or will not relocate." ADC Chem. Regs. at I. Force may not be used as a means of punishment. ADC Force Regs. at III.B.

Immediately after the incident Treats was cited for a major disciplinary violation and was placed in solitary confinement for several days. Subsequently Treats had a hearing before an ADC hearing officer and received 15 days of punitive isolation and lost 90 days of good time. He filed unsuccessful administrative appeals and a grievance.

On January 11, 1999, Treats brought this § 1983 action against Morgan, Beaty, the prison warden, and the assistant director of ADC (the latter two defendants were subsequently dismissed). He alleges that his Eighth Amendment rights were violated when he was unnecessarily and unreasonably sprayed with capstun, slammed down, and handcuffed.

Morgan and Beaty moved for summary judgment, arguing that Treats had failed to state a constitutional violation and that they were entitled to qualified immunity because their use of force had been reasonable and because any harm to Treats was de minimis. They relied on Jones v. Shields, 207 F.3d 491 (8th Cir. 2000), a case in which the use of pepper spray on a recalcitrant inmate was held not to be an Eighth Amendment violation. Id. at 496. The magistrate judge recommended that the motion for summary judgment be granted, but the district court decided otherwise

after its de novo review, concluding that "the factual situation here is more comparable to" Foulk v. Charrier, 262 F.3d 687 (8th Cir. 2001), than Jones. The motion was denied, and the officers appealed.

On appeal Morgan and Beaty rely on Jones and argue that use of pepper spray is a de minimis injury in terms of the Eighth Amendment if an inmate has disobeyed an order and receives medical attention after being sprayed. They contend that the district court erred by relying on Foulk because the facts there were distinguishable. Treats responds that the district court should be affirmed because appellants inflicted unnecessary pain on him and used excessive force for the circumstances, in violation of his Eighth Amendment rights. We review de novo the denial of qualified immunity at the summary judgment stage. Lambert, 187 F.3d at 935.

Qualified immunity may protect government officials from liability for civil damages, but it is not available if an official's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996). There is a "proper sequence" in analyzing an interlocutory appeal from a denial of qualified immunity. Saucier v. Katz, 533 U.S. 194, 200 (2001). The first question is whether the facts, taken in a light most favorable to the party alleging an injury, show a violation of a constitutional or statutory right. Id. at 201. If the answer is yes, the next question is whether that right was so clearly established that it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. An officer is entitled "to avoid the burden of trial" unless the answer to both questions is yes. Id., at 201.

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, Whitley v. Albers, 475 U.S. 312, 319 (1986), regardless of whether an inmate suffers serious injury as a result. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Officers are permitted to use force reasonably "in

a good-faith effort to maintain or restore discipline," but force is not to be used "maliciously and sadistically to cause harm." Id. at 7. Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Id. See also Hickey v. Reeder, 12 F.3d 754, 758 (8th Cir. 1993).

Treats testified that he did not intentionally disobey Morgan, use profanity or abusive language, or threaten any correctional officer, and that he was sprayed without warning, thrown down to the floor, and handcuffed. At this stage of the proceedings, the evidence must be taken in a light most favorable to Treats. See Saucier, 533 U.S. at 201. Viewed in this way, the evidence does not show an objective need for the force which was used because Treats had not jeopardized any person's safety or threatened prison security. Appellants argue that Treats did not obey Morgan's commands and that this justified the force used, but the record at this stage does not suggest that Treats would have remained noncompliant if Morgan had given him clearer directions or issued a warning before spraying him in the face. Appellants have not pointed to any rule or given any reason why Treats was required to take a copy of the property confiscation form. The law recognizes that order and discipline are important in running a correctional institution, but that does not authorize the arbitrary use of force, see Foulk, 262 F.3d at 702, nor does it justify punitive use of force on difficult inmates not posing a real threat to other persons or raising security concerns. See Hickey, 12 F.3d at 759; ADC Force Regs. at III.B.; ADC Chem. Regs. at I.

Appellants point to the statement in Jones that "a limited application of capstun to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." 207 F.3d at 496, quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). The use of capstun on the recalcitrant

inmate "in [that] prison setting resulted in de minimis injury for Eighth Amendment purposes." 207 F.3d at 495. Appellants appear to interpret Jones to mean that use of capstun on a disobedient or querulous inmate can never make out a constitutional violation, but we cannot agree. Our court has already made it clear that Jones "did not hold that all applications of pepper spray result in de minimis injury." Lawrence v. Bowersox, 297 F.3d 727, 731 (8th Cir. 2002).

Resolution of the constitutional issue turns on the circumstances of the individual case or the particular "prison setting." Jones, 207 F.3d at 495. Not every instance of inmate resistance justifies the use of force, Hickey, 12 F.3d at 759, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions. Foulk, 262 F.3d at 702. The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, or malicious. See Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319. A basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat. See Foulk, 262 F.3d at 691-92, 702. See also Lawrence, 297 F.3d at 730, 732 (correctional officer violated Eighth Amendment by ordering use of pepper spray on inmates who had questioned his command "Niggers get naked" during a post riot search).

The district court reasoned that the facts of this case resemble those in Foulk more than those in Jones. Foulk upheld a judgment in favor of an inmate who had been sprayed in the face with pepper spray after questioning the actions of correctional officers and asking to speak to a supervisor. 262 F.3d at 691-92, 702. That inmate had been asleep in the infirmary when he was woken twice by an officer and ordered to eat. Id. at 692. He angrily refused and was cited for conduct violations. When he asked why he had been cited, he got no answer and his request to speak to a supervisor was ignored. After he went back to sleep, a second officer woke him, made him stand against the wall, sprayed him in the face with pepper

-6-

spray, and then sprayed him a second time after he asked for the officer's name. Id. What happened in Foulk is similar to this case in that Treats was also sprayed in the face with capstun after questioning an order and asking to speak to a supervisor. See also Lawrence, 297 F.3d at 730, 732.

The inmate in Jones in contrast had refused his supervisor's order to mop the kitchen floor and was sent to the "riot gate" where he was met by another officer who told him he faced discipline for refusing to work and ordered him over to a desk to give his name and prisoner number. 207 F.3d at 492. The larger inmate first questioned the order and then complied. He was ordered to go to his barracks and twice asked to identify them, and he became loud, argumentative, and profane. Id. at 492-93. The officer sprayed him with capstun, and he was pushed against a wall and handcuffed. A different correctional officer testified at the evidentiary hearing before the magistrate judge that the inmate had "charge[d] toward" the officer.[2] Id. at 493.

The court in Jones concluded that the inmate's actions rose to the level of recalcitrance, id. at 496, and that the spraying officer could have reasonably feared for his safety under the circumstances. Id. at 497 n.8. Treats cannot at this stage of the proceedings be said to have been recalcitrant or threatening. Although he refused to take a copy of the property form, he maintains that he knew of no regulation requiring him to have it, that he explained this to Morgan, and that he attempted to ask the lieutenant about it. He was sprayed in the face, slammed to the floor, and

---

[2] There was other evidence offered by the defense at that hearing. Testimony was received from an officer who witnessed the incident, from an assistant warden, and from a witness who was an expert on the use and effects of capstun; portions of the incident report were also read into the record. 207 F.3d at 493-94. In this case appellants did not present any evidence at the hearing at which Treats testified, but they subsequently submitted copies of prison incident reports and disciplinary records with their summary judgment motion.

handcuffed. Appellants argue that the findings of an ADC hearing officer that Treats had used abusive language to staff, failed to obey a verbal order, and resisted being handcuffed after being sprayed, shows that he was recalcitrant. At this stage, however, we view the facts in a light most favorable to Treats, see, e.g., Jones, 207 F.3d at 495, and in that light they do not rise to the level of recalcitrance. To the extent that there are disputed issues of material fact, they of course create genuine issues for trial. Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994). See also Johnson v. Jones, 515 U.S. 304 (1995).

Appellants also argue that they tempered their use of force by taking Treats to the infirmary promptly, but that does not establish that the force was reasonable. The ADC regulations required Morgan to call upon a member of the medical staff to flush Treats' eyes and skin with water if he was incapable of doing so himself. ADC Chem. Regs. at II.D.1.d. While the prompt provision of medical treatment may show that an officer lacked malice in certain circumstances, see Jones, 207 F.3d at 497, in other circumstances it may mean nothing more than perfunctory compliance with prison regulations or it may signal that an officer overreacted in administering force. The use of force here would have been tempered if Morgan had followed the ADC regulation requiring him to warn Treats before spraying him with capstun, giving him another chance to comply. See ADC Force Regs. at III.C.2.a.; ADC Chem. Regs. at II.B. At oral argument counsel for appellants conceded that in the circumstances of this case Morgan would have been able to give such a warning before spraying Treats.

The Hickey case is also instructive. There officers were found to have violated the Eighth Amendment by using a stun gun on an inmate who had used profanity and had refused to sweep his cell in violation of a prison regulation. Hickey, 12 F.3d at 756, 759. Like Treats, the inmate in Hickey "was not physically threatening the officers," id. at 758, and was "nonviolent." Id. at 759. The court concluded that the amount of force used was excessive in the circumstances and noted that use of

"summary force has yet to be ratified as the de jure method of discipline where security concerns are not immediately implicated." Id. at 759.

Viewed in a light favorable to Treats, the evidence shows that there was no objective need for the degree of force used or the pain inflicted, that appellants could not reasonably have perceived Treats to be a threat to themselves or institutional security at the time, and that appellants failed to temper their forceful response. No lasting injury is necessary to make out an Eighth Amendment violation, for the infliction of pain is sufficient if it was inflicted for the purpose of causing harm. Hudson, 503 U.S. at 9. Treats has presented sufficient evidence for a reasonable jury to conclude that appellants acted maliciously with the intent to cause injury when Morgan sprayed him with capstun pepper spray without warning and Beaty threw him down. Cf. Foulk, 262 F.3d at 702. Treats has thus satisfied his burden to show that the nature and manner of the force used was excessive under the circumstances and that his constitutional rights were violated by appellants.

In order to overcome the claims of qualified immunity, Treats must also show that his constitutional rights were clearly established. A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of what type of action would violate that right. Hope v. Pelzer, 122 S.Ct. 2508, 2515 (2002). It is "well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." Foulk, 262 F.3d at 702. It is also clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security. See Lawrence, 297 F.3d at 732; Jones, 207 F.3d at 496-97; Hickey, 12 F.3d at 759; Stenzel v. Ellis, 916 F.2d 423, 426-27 (8th Cir. 1990). At the time Treats was sprayed, the law was clearly established that correctional officers do not

-9-

have a blank check to use force whenever a prisoner is being difficult. Hickey, 12 F.3d at 759.

Prison regulations governing the conduct of correctional officers are also relevant in determining whether an inmate's right was clearly established. Hope, 122 S.Ct. at 2517. The ADC regulations authorize use of pepper spray only when an inmate is threatening physical harm, refuses to produce an item, or refuses to relocate, ADC Chem. Regs. at I, and the regulations prohibit its use without warning, ADC Force Regs. at III.C.2.a.; ADC Chem. Regs. at II.B., or as punishment. ADC Force Regs. at III.B. The ADC promulgated these rules to regulate the conduct of correctional officers, and Treats has presented evidence that appellants violated each of them. Counsel conceded at oral argument that Morgan could have provided a warning in the circumstances of this case, and such a precaution would have helped bring appellants into compliance with ADC regulations and Eighth Amendment cases warning against unreasonable or punitive use of force. Cf. Bennett v. Cambra, 125 F.3d 857 (9th Cir. 1997) (unpublished table decision) (no Eighth Amendment violation by use of pepper spray after repeated warnings over several hours that it would be used to extract inmate's dinner tray unless he voluntarily relinquished it).

To the extent that the argument on behalf of appellants appeared to interpret Jones as holding that use of capstun in a prison setting will never amount to an Eighth Amendment violation, it would be mistaken. That can be seen from our two pepper spray cases from the Missouri prison system. See Lawrence, 297 F.3d 727; Foulk, 262 F.3d 687. It would be a matter of serious concern if correctional officers were to believe that a painful substance like capstun could be used at will. Arkansas has regulations in place that set standards for the use of force and chemical agents, and it is to be hoped that the training for correctional officers includes education and guidance on their appropriate use.

-10-

It remains to be seen what a full record in this case will show and whether Treats can prevail on his claim. The issue at this stage is whether the district court erred in denying the motion for summary judgment. Since Treats has presented sufficient evidence at this threshold stage to show a violation of a clearly established constitutional right, the district court did not err in denying summary judgment to appellants. Cf. Foulk, 262 F.3d at 702. We affirm the order of the district court and remand for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.